**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Ann M. Larson,<br><br>                      Plaintiff,<br>v.<br><br>Wells Fargo Bank, N.A.,<br><br>                      Defendant. | Civil File No. 09-3720 (MJD/LIB)<br><br>**Memorandum in Support of Wells Fargo Bank, N.A.'s Motion for <u>Summary Judgment</u>** |

## Introduction

Section 507.02 of the Minnesota Statutes provides that a conveyance of a married couple's homestead is void unless both spouses sign the conveyance document. The purpose of the statute is to ensure a secure homestead for families by preventing one spouse from alienating the family homestead without the other spouse's consent.

Obviously implicit in both the language and the purpose of Minn. Stat. § 507.02 is that the homestead in question is <u>both spouses'</u> homestead. And that is where plaintiff Ann Larson's claim founders.

Ms. Larson and her husband have been separated for more than 20 years; they have never gotten a formal divorce. For 15 years, each has individually owned and lived in a separate house—hers in New Brighton, his in Ortonville, on the South Dakota border nearly 200 miles away. For 15 years, plaintiff has claimed her New Brighton home as her homestead.

Ms. Larson is suing Wells Fargo to void two mortgages that her husband placed on <u>his own house</u>—a house that she concedes she has never lived in, never called her home, and never claimed as a homestead under Minnesota law.

Section 507.02 does not void the two mortgages, so Wells Fargo is entitled to judgment as a matter of law on Plaintiff's claims, for two reasons. First, Plaintiff conceded in her deposition that the mortgaged property is not and never has been her homestead, so the statute does not apply by its own terms. Second, even if the property were somehow Plaintiff's "homestead" for purposes of Section 507.02, the statute does not apply in this instance because the statutory purpose is satisfied and its application would produce unjust results. Thus, Wells Fargo respectfully asks the Court to grant its motion for summary judgment.

## **Facts**

<u>Plaintiff's Marriage to James Larson</u>

Plaintiff Ann Larson married James Larson on December 29, 1962. (Larson Dep., Dec. 13, 2010, p. 9, App. WF 2.) Sometime in the 1970s, Plaintiff and her husband purchased a home in Minneapolis. (*Id.* at p. 11, App. WF 3.) Plaintiff lived in the home with her husband until approximately 1990, at which time the two separated. (*Id.*) Plaintiff and her husband have remained separated since 1990—more than 20 years—but they have never obtained a formal divorce.

After the separation, Plaintiff lived in the couple's Minneapolis home for an additional five years by herself, after which she and her husband sold the home. (*Id.*)

Plaintiff's Home for the Last 15 Years

After the 1995 sale of the Minneapolis home, Plaintiff purchased a home in New Brighton. (*Id.* at 13:4–10, App. WF 3.) She purchased the home by herself and has lived in the home by herself for the past 15 years. (*Id.* at 11–13, App. WF 3.) Plaintiff has also claimed the New Brighton home as her homestead for property-tax purposes for the past 15 years. (*Id.* at 20–21, App. WF 5; *see also* Notices of Proposed Property Tax, App. WF 8–12.)

James Larson's Home and Mortgages

After he separated from Plaintiff, James Larson purchased property at 525 Lakeshore Drive in Ortonville, Minnesota (the "Mortgaged Property"). In January 2003, Larson borrowed $100,000 from Wells Fargo and secured the loan by executing a mortgage on the Mortgaged Property in favor of Wells Fargo. (Compl. ¶ 9; *see also* App. WF 13–27.) In March 2004, Larson borrowed an additional $40,000 from Wells Fargo and secured the loan by executing an additional mortgage on the Mortgaged Property in favor of Wells Fargo. (Compl. ¶ 16; *see also* App. WF 28–34.) On each mortgage, James stated that he was an unmarried man. (*See* App. WF 13–34.)

Plaintiff testified at her deposition that she played no role in the original purchase of the Mortgaged Property by her husband and was unaware of the 2003 and 2004 mortgages until Wells Fargo foreclosed upon the 2003 mortgage. (Larson Dep. at 17, 27–29, App. WF 4, 7.) She testified that she never lived in the Mortgaged Property (*id.* at 24:7–8, App. WF 6); in fact, she has visited the home only three times to see her grandchildren. (*Id.* at 22:20–23:3, App. WF 6.)

3

James became delinquent on the mortgages on the Mortgaged Property, and Wells Fargo ultimately foreclosed on the 2003 mortgage. A Sheriff's sale of the property occurred on February 12, 2009. (Compl. ¶ 12.)

This Lawsuit

After the foreclosure and Sheriff's sale, Plaintiff filed this lawsuit seeking to declare both the 2003 and 2004 mortgages void under Minn. Stat. § 507.02 on the ground that she did not sign the mortgages.

## **Argument**

Wells Fargo is entitled to judgment as a matter of law on plaintiff's claims because Minn. Stat. § 507.02 does not apply to the 2003 and 2004 mortgages that James Larson placed on <u>his own property</u>—property that Plaintiff concedes she has never lived in or claimed as a homestead.

> Plaintiff's claims are based on Minn. Stat. § 507.02, which provides that:
>
> If the owner is married, no conveyance of the homestead, except a mortgage for purchase money under section 507.03, a conveyance between spouses pursuant to section 500.19, subdivision 4, or a severance of a joint tenancy pursuant to section 500.19, subdivision 5, shall be valid without the signatures of both spouses.

Minn. Stat. § 507.02.

Section 507.02 does not void the mortgages for two reasons. First, Plaintiff testified that the property at issue is not and never has been her homestead. Second, even if the property were somehow considered Plaintiff's homestead even though she has never lived there, Minnesota courts do not apply Minn. Stat. § 507.02 when the purposes of the statute are not implicated in a particular case. This is one such case.

I.   **Section 507.02 Does Not Apply to the Mortgages Because the Mortgaged Property is not Plaintiff's Homestead.**

Section 507.02 does not define the term "the homestead," but in context it can mean only one thing: a <u>married couple's</u> homestead. That is because the statute expressly deals with married people, so that an undefined reference to "the homestead" most naturally refers to the married people's joint homestead, as opposed to either spouse's <u>separate</u> homesteads established after separation. In addition, the statute refers to "the" homestead, rather than "a" homestead. Use of the definite article "the" points strongly toward there being only <u>one</u> of whatever is referred to. But when, as here, spouses are separated and each maintains his and her own separate homesteads, the term "the homestead" would be ambiguous (which spouse's homestead is "the" homestead?). That would violate the Minnesota Legislature's instruction that its statutes be interpreted in a way that makes them certain, and not ambiguous. Minn. Stat. § 645.17(2). The only way to make the term "<u>the</u> homestead" unambiguous is to interpret it to refer the one and only homestead that is shared by the married couple. And the property in question clearly does not satisfy that definition, as Plaintiff conceded in her deposition that she has never lived at the property or called it her homestead.

If there were any ambiguity in Section 507.02, we would look at the purposes of the statute to guide our understanding. *See* Minn. Stat. § 645.16. The purpose of Section 507.02 is to "ensur[e] a secure <u>homestead for families</u>" by "protecting the alienation of the homestead without the willing signatures of both spouses." *Dvorak v. Maring*, 285 N.W.2d 675, 677-78 (Minn. 1979) (emphasis added). When a statute is aimed at

5

protecting "families," it is only logical to read the term "the homestead" to mean a <u>family's</u> homestead, rather than one separated-but-not-yet-divorced spouse's homestead.

Because Plaintiff never lived in the Mortgaged Property, never claimed it as her homestead, had nothing to do with the acquisition of the property, and owns another home that she formally claims as her homestead for tax purposes, the Mortgaged Property is not Plaintiff's homestead as a matter of law and undisputed fact. *See In re Farrar*, 219 B.R. 48, 51–52 (Bankr. D. Vt. 1998) (husband's conveyance of former marital homestead to his son was not void under similar Vermont statute because conveyance was made after husband and wife separated and wife had moved out, such that property was no longer wife's homestead). Consequently, Minn. Stat. § 507.02 does not apply, and the 2003 and 2004 mortgages—along with the subsequent foreclosure of the 2003 mortgage—are valid and enforceable.

Plaintiff's counsel has suggested that her claims are supported by a 105-year-old opinion of the Supreme Court of Minnesota, *Murphy v. Renner*, 109 N.W. 593 (Minn. 1906), which held that under the predecessor to Section 507.02, a husband's conveyance of the family homestead without the wife's signature was void, even though the wife had abandoned the family and home several years before the conveyance. But *Murphy* is easily distinguishable from this case in two dispositive respects.

First, and most importantly, in *Murphy* and in each of the cases cited in *Murphy* the wife was <u>living with the husband in the home and using it as her homestead</u> before separating from the husband. Here, by contrast, Ms. Larson never lived at the Mortgaged Property. In fact, when her husband purchased the home, they had already been

separated for 10 years, and Plaintiff was living in a home that she purchased independent of her husband and claimed as her own homestead.

Second, the court's central concern in *Murphy* appeared to be the maintenance of the homestead for the security of the couple's children, who were living in the homestead at the time of the conveyance. The court reasoned that the "homestead law is not alone for the benefit of the husband, or for the wife, but for their children as well," and concluded that "[a] wife may have wrongfully abandoned her husband and home and yet be desirous of having the homestead kept for her children." *Murphy*, 109 N.W. at 594; *see also Holden v. Farwell, Ozmun, Kirk & Co.,* 27 N.W.2d 641, 646 (Minn. 1947) (noting that the purpose of the homestead exception is to protect the homestead right of the citizen, his wife, and his minor children). In this case, Plaintiff's children were grown and had left the home at the time that her husband purchased the Mortgaged Property. Thus, there are no minor children to protect.

*Murphy* is perfectly consistent with Wells Fargo's position that Section 507.02 applies only when a married couple establishes a family homestead that needs protection from alienation by one of the spouses without the other's consent. That situation existed in *Murphy*, but it does not in this case according to plaintiff's own testimony. Thus, Section 507.02 does not apply to this case, and Wells Fargo is entitled to summary judgment on Plaintiffs' claims as a matter of law.

**II.     Section 507.02 Does Not Apply to Void the 2003 and 2004 Mortgages Because the Purpose of the Statute is Satisfied and its Application Would Produce Unjust Results.**

Even if the Court were to conclude that Minn. Stat. § 507.02 applies to the situation here, the Court should not apply the statute because Minnesota courts do not apply the statute when the purposes supporting the statute are not present.

As noted above, the Supreme Court of Minnesota has explained that Section 507.02 "evidences the clear and unambiguous legislative policy of ensuring a secure homestead for families," and that the purpose is to "protect[] the alienation of the homestead without the willing signatures of both spouses." *Dvorak*, 285 N.W.2d at 677-78.  While the statute appears to impose an absolute bar on conveyances of the homestead without the signature of both spouses, Minnesota courts have not applied it so absolutely, and have declined to apply the statute in cases the purposes of the statute are not triggered.  For example, in *National City Bank v. Engler*, 777 N.W.2d 762 (Minn. App. 2010), the court declined to apply the statute to void a mortgage despite the absence of the spouse's signature when the wife actively and knowingly participated in the transaction, because the purpose of the statute to bar homestead transactions without both spouses' consent was not implicated when both spouses in fact consented to the transaction.  *See also Karnitz v. Wells Fargo, N.A.*, 572 F.3d 572 (8th Cir. 2009) (reversing trial court's application of Section 507.02 to void mortgage when wife testified that she knew and approved of mortgage on homestead and benefited from the transaction).

8

As in *Engler* and *Karnitz*, the purpose behind Section 507.02 is not implicated in this case. The purpose of the statute is to "ensur[e] a secure homestead for families," but that purpose will not be served by applying Section 507.02 here because there is no family that shares a homestead. Plaintiff has owned her own home for 15 years, and has officially claimed that home as her legal homestead. If Wells Fargo forecloses on her husband's mortgages and evicts him from the Mortgaged Property, it will have no effect on Plaintiff's access to a secure homestead. Plaintiff conceded as much in her deposition when she testified that she was not even aware of the existence of the 2003 and 2004 mortgages on her husband's house because "it was none of my business." (Larson Dep., 29:14–21, App. WF 7.) By contrast, if the Court applies the statute to void the 2003 and 2004 mortgages, Wells Fargo will be left with an unsecured debt in the amount of $140,000 on which it will not be able to collect, simply because James Larson is still legally married and did not get his wife's signature on a mortgage on property that she has never owned, lived on, or claimed as her homestead. This would be an absurd result, which is reason enough not to reach it. *See* Minn. Stat. § 645.17(1) ("the legislature does not intend a result that is absurd . . . or unreasonable").

## Conclusion

It is no surprise that Plaintiff's claims against Wells Fargo fail under the law. She seeks to invalidate mortgages on a home in which she never lived and that she has never claimed as a homestead, when she has lived in her own separate home for 15 years and has claimed it as her legal homestead ever since she bought it. Section 507.02 simply

9

does not apply to the mortgages executed by Plaintiff's spouse.  Thus, Wells Fargo is entitled to summary judgment on plaintiff's claims.

| | |
|---|---|
| Dated: March 1, 2011 | **FAEGRE & BENSON LLP** |
| | s/ Charles F. Webber |
| | Charles F. Webber (#215247) |
| | Evan A. Fetters (#389290) |
| | 2200 Wells Fargo Center |
| | 90 South Seventh Street |
| | Minneapolis, MN 55402-3901 |
| | (612) 766-7000 |
| | |
| | Attorneys for Defendant |
| | Wells Fargo Bank, N.A. |

fb.us.6442907.02