# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Angelia J. Larson,

               Plaintiff,

v.

Wells Fargo Bank N.A.,

               Defendant.

**MEMORANDUM OF LAW & ORDER**

Civil File No. 09-3720 (MJD/LIB)

---

Samuel V. Calvert, Samuel V. Calvert, PA, Counsel for Plaintiff.

Charles F. Webber and Evan Fetter, Faegre & Benson LLP, Counsel for Defendant.

---

## I.      INTRODUCTION

This matter is before the Court on Plaintiff's Motion for Summary Judgment [Docket No. 19] and Defendant's Motion for Summary Judgment [Docket No. 14].  Oral argument was heard Thursday, April 21, in Fergus Falls. For the foregoing reasons, Plaintiff's motion will be **GRANTED** and Defendant's motion will be **DENIED**.

## II.     FACTUAL BACKGROUND

### A.  James and Angelia Larson

1

James Larson and Plaintiff Angelia Larson are husband and wife, and were married on in 1962.  In about 1990, James and Angelia Larson separated, and they have lived separately for approximately the last twenty years.  However, they never divorced, and remain married to this day.

After the two separated, Plaintiff remained living in the Minneapolis home that the two had shared for many years.  After moving from that home, Plaintiff purchased a home by herself in New Brighton, Minnesota, and has lived there for the last fifteen years.  For tax purposes, Plaintiff has claimed the New Brighton home as her homestead property for the last fifteen years.

### B.  James Larson's Home and Mortgages

After separating from his wife, James Larson remained living in the Twin Cities for a period of time, but about eight years ago moved to Ortonville, Minnesota.  Upon moving to Ortonville, James acquired a home located at 525 Lakeshore Drive (the "Mortgaged Property").  In January 2003, James took out a mortgage in favor of Wells Fargo Home Mortgage, Inc. for $100,000.  In March 2004, James borrowed an additional $40,000 from Wells Fargo and secured this loan by executing a second mortgage on the Mortgaged Property in favor of Wells Fargo.  The proceeds of the mortgages were used in the operation of James

Larson's business, and Plaintiff did not receive any of the money.  According to

the mortgage documents supplied by Wells Fargo, on each mortgage James

stated he was a single man.  James Larson avers that in relation to these

mortgages he supplied Wells Fargo with copies of his income tax returns, which

show his marital status as "married filing separately."  It is undisputed that

Plaintiff did not sign either mortgage.

Plaintiff testified that she was not involved in the original purchase of the

Mortgaged Property, and was unaware of the 2003 and 2004 mortgages until

Wells Fargo foreclosed on the 2003 mortgage.  Plaintiff never lived in the

Mortgaged Property, and only has visited the property on three occasions.

Eventually James became delinquent on the mortgages and Wells Fargo

foreclosed on the 2003 mortgage.  A sheriff's sale of the Mortgaged Property

occurred on February 12, 2009.  Subsequently the Mortgaged Property was

quitclaimed to Federal Home Loan Mortgage Corporation.

On or about December 5, 2009, Plaintiff commenced a lawsuit against

Wells Fargo in Big Stone County District Court.  This action was removed by

Wells Fargo to this Court.  [Docket No. 1]  The Amended Complaint originally

brought two counts against Wells Fargo Bank N.A. and Federal Home Loan

Mortgage Corporation.  Count I alleges that the first mortgage James Larson

placed on the Mortgaged Property is void because Plaintiff did not sign the first

mortgage.  Count II alleges that the second mortgage James Larson placed on the

Mortgaged Property is void because Plaintiff did not sign the second mortgage.

Subsequent to this action being removed to this Court, Federal Home Loan

Mortgage Corporation was dismissed as a party to this action [Docket No. 7].  On

March 1, 2011, Defendant brought a Motion for Summary Judgment on all claims

[Docket No. 14].  On that same day, Plaintiff filed a Motion for Summary

Judgment [Docket No. 19].  Plaintiff in her motion states that because Federal

Home Loan Mortgage Corporation has been dismissed from this action, only the

2004 mortgage is part of this action.  (Pl.'s Mem. 2.)  Federal Home Loan

Mortgage Corporation's ownership of the Mortgaged Property pursuant to the

foreclosure of the 2003 mortgage and subsequent quitclaim deed is not in

dispute.  Plaintiff's motion only seeks to void the 2004 mortgage.

## III.   DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in the light most

favorable to the non-moving party, there is no genuine dispute as to any material

fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking

summary judgment bears the burden of showing that there is no genuine dispute

as to any material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Summary judgment is only appropriate when "there is no dispute of fact and

where there exists only one conclusion."  Crawford v. Runyon, 37 F.3d 1338, 1341

(8th Cir. 1994) (citation omitted).

    "Only disputes over facts that might affect the outcome of the suit under

the governing law will properly preclude the entry of summary judgment.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Factual disputes that

are irrelevant or unnecessary will not be counted.  Id.  "[I]n ruling on a motion

for summary judgment, the nonmoving party's evidence 'is to be believed, and

all justifiable inferences are to be drawn in [that party's] favor.'"  Hunt v.

Cromartie, 526 U.S. 541, 552 (1999).

### B.  Minn. Stat. § 507.02

    With exceptions which are not relevant in this case, Minn. Stat. § 507.02

provides that, "[i]f the owner is married, no conveyance of the homestead . . .

shall be valid without the signatures of both spouses."  Minn. Stat. § 507.02.

Conveyance includes "every instrument in writing whereby any interest in real estate is created, aliened, mortgaged, or assigned or by which the title thereto may be affected in law or in equity . . . ." Minn. Stat. § 507.01. A person's "homestead" is "the house owned and occupied by a debtor as the debtor's dwelling place." Minn. Stat. § 510.01. The Minnesota Supreme Court has held these statutes to mean that without the signatures of both spouses, a conveyance of homestead property is not merely voidable but is void, and the buyer acquires no rights whatsoever in the property. Dvorak v. Maring, 285 N.W.2d 675, 677 (Minn. 1979).

The public policy reasoning behind the statute at issue here is to ensure "a secure homestead for families" by "protecting the alienation of the homestead without the willing signature of both spouses." Id. at 677-78. The statute is meant to protect the non-signing spouse from "an unknowing conveyance of his or her interest in the homestead." National City Bank v. Engler, 777 N.W.2d 762, 766 (Minn. Ct. App. 2010).

Plaintiff asserts that application of this statute to the facts of this case makes the 2004 mortgage void. The Court agrees. In this case, it is undisputed that the Larsons were married at the time James Larson mortgaged his home, it is

undisputed that the home was James Larson's homestead at the time it was

mortgaged, and it is undisputed that Plaintiff never signed the mortgage.  Thus,

by application of Minn. Stat. § 507.02, the 2004 mortgage in favor of Wells Fargo

is void.

Minnesota case law establishes that the fact that the Larsons have been

separated for over 20 years does not affect the application of Minn. Stat. § 507.02.

In Murphy v. Renner, 109 N.W. 593 (Minn. 1906), the Minnesota Supreme Court

noted that in 1886 the wife "abandoned her home, her husband, and their five

minor children then living on the land, without any just cause.  She went to

Duluth and other places without any intention of ever returning to her husband

and home.  In 1889 she went through the form of a marriage ceremony with

another man . . . ."  Id. at 593.  Subsequently, in 1893, the husband attempted to

convey the homestead property without his wife's signature.  Id.  In one of the

instruments the husband described himself as a widower, and in a second he

described himself as an unmarried man.  Id.  Nonetheless, the Supreme Court

stated "[w]e hold upon principle and authority that an attempted conveyance by

deed, mortgage, or otherwise, of his homestead by a married man without his

wife's signature is void, although at the time she may have abandoned him and her home . . . ."  Id. at 594.

Furthermore, in Rux. v. Adams, 172 N.W. 912 (1919), the Minnesota Supreme Court was confronted with a case where the husband and wife lived in Indiana, but in 1890 sold their farm and divided the funds.  Id. at 913.  The husband and wife immediately separated, and the husband moved to Minnesota while the wife remained in Indiana, although they were never divorced.  Id. The husband acquired 120 acres of land in Minnesota, and began to live on this land with another woman as husband and wife, although no marriage ceremony was performed.  Id.  The wife never saw the husband again.  Id.  In 1908, the husband executed a warranty deed which purported to convey the land to the other woman, the defendant in the case, without the signature of his wife.  Despite the fact that the husband and wife had been separated for 19 years, despite the fact that the wife had never set foot on the property in question, and despite the fact that the husband signed the deed purporting to convey the land to the defendant the Supreme Court stated:

> When Rux executed the deed to defendant, he occupied the house
> upon the premises conveyed; hence some portion thereof
> constituted his homestead as defined by Gen. St. 1913, § 6957 . . .  As
> to the homestead, the deed was void, because his wife did not join in

its execution. . .  The fact that she was not living with him is of no
consequence.  Without her signature his deed to his homestead was
a nullity.

Id. at 913-14 (citations omitted).

Finally, in St. Denis v. Mullen, 196 N.W. 258 (Minn. 1923) the Minnesota

Supreme Court was presented with a case where the husband and wife were

married in 1862.  Id. at 258.  In 1875 the husband and wife separated, and the

wife "took her children and returned to the home of her father in New York."  Id.

In 1876 and in 1881, the husband visited the wife asking her to return, but the

wife refused.  Id.  In 1884, the husband obtained a marriage license and went

through a wedding ceremony with another woman, with whom the husband

lived until his death in 1913.  Id. at 259.  In 1902, the husband obtained title to an

80-acre farm and he occupied the farm as his homestead with the other woman.

Id.  Two weeks before the husband died, he deeded this property to the other

woman, through a third person.  Id.  Despite 38 years of separation, the fact that

the wife had never set foot on the property, the fact that the husband "assumed

to marry" another woman, the Supreme Court held that "[t]he farm was the

homestead of St. Denis.  His deed through another to [the other woman], his wife

not joining, was void."  Id.

This case law articulates that the requirement that both spouses join the conveyance of a homestead is deeply engrained in Minnesota real estate law. Moreover, these cases establish that the fact that the Larsons were separated at the time the mortgages were placed on the Mortgaged Property does not render the requirements of Minn. Stat. § 507.02 inapplicable.

Defendant argues, however, that Minn. Stat. § 507.02 does not apply in this case, because the Mortgaged Property was not the Plaintiff's homestead at the time the mortgages were granted in favor of Wells Fargo. Defendant asserts that although the statute does not define homestead, in context it can only mean a married couple's homestead. Defendant contends that the only way to make the term "the homestead" unambiguous is to interpret it to refer to the one and only homestead shared by a married couple, because otherwise where husband and wife have separate homesteads it would be unclear which is the homestead for the purpose of the statute. The Court does not agree with Defendant's interpretation of the statute.

In <u>Cleys v. Cleys</u>, 363 N.W.2d 65 (Minn. Ct. App. 1985), the Minnesota Court of Appeals was presented with a similar argument. In <u>Cleys</u>, the husband and wife purchased two pieces of land as joint tenants. <u>Id.</u> at 68. The two

eventually separated, but never officially dissolved the marriage.  Id.  The

husband attempted to deed the property to his brother.  Id.  The brother argued

that a homestead must be the "'family residence' and 'joint abode' of both

spouses."  Id. at 70.  The court rejected this argument stating "[t]he property's

status as a family residence is irrelevant under the descent and distribution

statutes."  Id. (citing St. Denis, 196 N.W. 258; Rux, 172 N.W. 912; Murphy, 109

N.W. 593).  Minn. Stat. § 510.01 states that "[t]he house owned and occupied by a

debtor as the debtor's dwelling place . . . shall constitute the homestead of such

debtor and the debtor's family."  As stated above, it is undisputed that the

Mortgaged Property was James Larson's homestead.  Thus, pursuant to Minn.

Stat. § 510.01 the Plaintiff maintained homestead rights in the Mortgaged

Property, despite the fact she did not live with James at the Mortgaged Property.

Accordingly, the Court finds that the requirements of Minn. Stat. § 507.02 are

applicable to the case at hand.

     Additionally, Defendant argues that even if the Court finds that Minn.

Stat. § 507.02 applies in this case, the Court should not apply the statute because

Minnesota courts do not apply the statute when the purposes behind the statute

are not present.  Defendant argues that application of the statute in this case

would be inequitable, because Plaintiff owns her own property and because, in

relation to the mortgages, James Larson represented that he was a single man.

The Minnesota Supreme Court has recognized that even though great

importance is attached to the homestead right, a party may be estopped from

denying a sale of the homestead under certain circumstances even if the

requirements of Minn. Stat. § 507.02 are not met.  Dvorak v. Maring, 285 N.W.2d

675, 677 (Minn. 1979).  In order to establish an estoppel defense, the party

seeking relief must show that (1) the non-signing spouse consented and had

prior knowledge of the transaction, (2) the non-signing spouse retained the

benefits of the transaction, and (3) the party seeking to invoke estoppel

sufficiently changed its position to invoke the equities of estoppel.  Karnitz v.

Wells Fargo Bank, N.A., 572 F.3d 572, 574-575 (8th Cir. 2009) (citing Dvorak, 285

N.W.2d at 678).   Defendant directs the Court to two recent decisions to show

that Minnesota courts have declined to apply Minn. Stat. § 507.02 for equitable

reasons.  National Bank v. Engler, 777 N.W.2d 762 (Minn. Ct. App. 2010);

Karnitz, 572 F.3d 572.

In Engler, the court declined to apply the statute to void a mortgage even

though the wife had not signed the mortgage as a borrower. Engler, 777 N.W.2d

12

at 766.  In <u>Engler</u>, although the wife did not sign the mortgage as a borrower, the wife signed the mortgage for the purpose "of waiving any and all Homestead Rights."  <u>Id.</u> at 764.  The court stated that a party that waives their homestead rights also waives the protection of Minn. Stat. § 507.02, and accordingly the purpose of the statute was satisfied by the wife's waiver of her homestead rights. <u>Id.</u> at 766.

In <u>Karnitz</u>, the Eighth Circuit reversed the trial court's application of § 507.02 to void a mortgage where the wife did not sign, because the wife knew of the mortgage, intended the mortgage to be granted in favor of Wells Fargo, retained the benefits of the mortgage, and the bank significantly changed its position in reliance on the validity of the mortgage.  <u>Karnitz</u>, 572 F.3d at 575.

The Court, however, finds these cases distinguishable from the case at hand.  In <u>Engler</u> the court concluded that the wife's signature on the mortgage, which waived her homestead rights, served to waive her protection under § 507.02.  <u>Engler</u>, 777 N.W.2d at 766.  In the present case, Plaintiff did not sign the mortgages in any capacity, and thus did not waive her homestead rights like the wife in <u>Engler</u>.

Furthermore, in <u>Karnitz</u> the Eighth Circuit applied equitable estoppel because the nonsigning spouse in that case consented to the transaction, retained the benefit of the transaction, and the bank changed its position in reliance on the transaction.  <u>Karnitz</u>, 572 F.3d at 575.  Plaintiff in the case at hand did not consent to the mortgages and did not receive any benefits from the mortgages.  Since all the elements necessary for the application of equitable estoppel articulated in <u>Karnitz</u> are not present the Court will not apply equitable estoppel.

Finally, Defendant argues that the Minnesota Supreme Court's ruling in <u>St. Denis</u> argues against applying Minn. Stat. § 507.02 to void the mortgages between James Larson and Wells Fargo.  Defendant notes that the wife in <u>St. Denis</u> was aware of the husband's assumed marriage shortly after it occurred in 1884.  <u>St. Denis</u>, 196 N.W. at 259.  Additionally, the wife was aware of the husband's death in 1913, and that he left property.  <u>Id.</u>  In 1914, the wife's son travelled to Minnesota to investigate the husband's property.  <u>Id.</u> at 260.  In April 1915, two years after the husband's death, the other woman deeded the property to a third party, who subsequently gave a mortgage on the property to a local bank.  <u>Id.</u> at 259.

Given these facts, although the Supreme Court held that the husband's deed to the other woman was void, the court further held that the wife and son were equitably estopped from invoking the statute to void the conveyance, because they knew that the husband was living with this other woman for over 29 years and "must be held to have known that the record title might be passed to an innocent purchaser." Id. at 260.  The Supreme Court stated that "[i]f they had proceeded with some promptness" the property would not have been mortgaged and the innocent purchasers would not have paid money for the property. Id.

Defendant argues that in the case at hand, the same principle of estoppel should be applied.  Defendant asserts that Plaintiff should not be allowed to sit idly by while James lives in his own house, "giving an appearance of a perfect title wholly inconsistent with [Plaintiff's] claim which was unknown, and was unascertainable from the public record" and then come out of nowhere to assert that she has a right to void a mortgage that James placed on his home, when it is undisputed that she never lived in the home. Id.

The Court once again disagrees with Defendant's arguments.  The Minnesota Supreme Court in Dvorak laid out the elements required to establish a

defense of equitable estoppel.  As already discussed, there is no evidence that

Plaintiff was aware of the mortgages placed on the Mortgaged Property by James

Larson.  Additionally, there is no evidence that Plaintiff retained any benefits

from these transactions.  Furthermore, although James Larson represented that

he was a single man in the mortgage documents, this is precisely the type of

action which is covered by Minn. Stat. § 507.02.  If the Court were to find that

application the statute was inequitable simply because James Larson

misrepresented his marital status, the protections of Minn. Stat. § 507.02 would

be rendered meaningless since it would set a precedent that any time a person

misrepresented their marital status the non-signing spouse would have no

recourse under the statute.  By its ruling, the Court is not passing judgment on

any potential claims Defendant may have against James.  However, the fact the

James presented himself as a single man does not render Minn. Stat. § 507.02

inapplicable.  Accordingly, this Court will not apply the doctrine of equitable

estoppel to prevent application of Minn. Stat. § 507.02.

## IV.  CONCLUSION

Since the Court finds Defendant's arguments against the application of Minn. Stat. § 507.02 unconvincing, the Court will grant Plaintiff's motion and correspondingly will deny Defendant's motion.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff Angelia Larson's Motion for Summary Judgment [Docket No. 19] is **GRANTED**.

2. Defendant Wells Fargo Bank N.A.'s Motion for Summary Judgment [Docket No. 14] is **DENIED.**

3. The mortgage executed by James Larson in favor of Wells Fargo Bank N.A. dated March 26, 2004 is void and has no effect.

   **LET JUDGMENT BE ENTERED ACCORDINGLY**.


Date:   June 30, 2011                    s/ Michael J. Davis
                                         Michael J. Davis
                                         Chief Judge
                                         United States District Court